# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JENNY CONNELL SMITH,** } | |
| } | |
| **Plaintiff,** } | |
| } | **Case No.: 2:14-CV-1334-RDP** |
| v. } | |
| } | |
| **HAYNES & HAYNES PC, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' motion for summary judgment[1] (Doc. # 20). The motion has been fully briefed. (Docs. # 21, 28, 35, and 36). For the following reasons, the court concludes Defendants' motion is due to be granted in part and denied in part.

**I.    Relevant Undisputed Facts**

Plaintiff Jenny Connell Smith, a legal assistant/paralegal, worked for[2] Defendants from approximately December 2000 through April 2009, and again from July 2011 through December 2012. (Doc. # 14, ¶¶ 22, 27, and 28). Plaintiff alleges that she was misclassified as a contract employee and was improperly paid during the second occasion she worked for Defendants. (Doc. # 14, ¶¶ 56, 71-73). Plaintiff further alleges, among other things, that during the "second occasion" she worked for Defendants, she worked in excess of forty (40) hours in various weeks and was not paid overtime in accordance with the Fair Labor Standards Act ("FLSA"). (Doc. # 14, ¶ 65).

---

[1] Defendants' motion is actually titled "Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment." (Doc. # 20). Because materials outside the pleadings are addressed and considered by the court, the motion is viewed as a motion for summary judgment and analyzed pursuant to Federal Rule of Civil Procedure 56.

[2] For purposes of this motion, the court does not resolve the question of whether Plaintiff's status was that of an employee or an independent contractor.

On April 14, 2011, prior to her second period working with Defendants, Plaintiff filed a Voluntary Chapter 13 Bankruptcy Petition with the United States Bankruptcy Court, Northern District of Alabama, Southern Division. (Docs. # 13, 29-3). The Petition was signed under penalty of perjury. (Doc. # 13 at 3). At the time she filed the Petition, Plaintiff worked for the law firm of Cochran & Associates, earning $3,750.00 per month. (Doc. # 13).

Shortly after filing the Petition, Plaintiff returned to work with Defendants. She planned to perform paralegal work not only for Defendants, but also for other attorneys in the Birmingham area. (Doc. # 13). Her bankruptcy case remained open throughout the entirety of her second stint of work with Defendants. Nevertheless, at no time did Plaintiff amend her Bankruptcy Petition or schedules. (Doc. # 29-3). Item 21 on Schedule B to Plaintiff's Bankruptcy Petition required Plaintiff to disclose "Other contingent and unliquidated claims of every nature . . .." Plaintiff did not identify any contingent or unliquidated claims in her bankruptcy schedules. (Doc. # 13 at 26).

Plaintiff's bankruptcy plan was confirmed on August 24, 2011. (Docs. # 13 at 61-62, 29-3). During the pendency of Plaintiff's Chapter 13 Bankruptcy, she was not obligated to make any payments on over $63,000.00 in student loans which were guaranteed by the United States Department of Education. (Doc. 13 at 64-66). On January 30, 2013, Plaintiff's bankruptcy case was dismissed due to her non-compliance. (Doc. 13 at 67-69).

On July 11, 2014, Plaintiff filed the current action. (Doc. # 1). In her original Complaint, Plaintiff alleged that she complained, both during the second stint in which she worked with Defendants and after, that she was misclassified and not being paid the overtime to which she was entitled. (Doc. # 1, ¶21).

2

On August 6, 2014, Plaintiff's original counsel withdrew and new counsel appeared. (Docs. # 6, 8, and 11). On August 11, 2014, the court conducted a status conference. At that status conference, Defendants' counsel informed the court that they planned to filed a motion for summary judgment on the issue of judicial estoppel based on Plaintiff's failure to disclose her potential overtime claim in her bankruptcy proceeding.

On August 27, 2014, Defendants filed their motion raising the judicial estoppel argument. (Doc. # 12). Approximately ten (10) hours after Defendants filed their motion, Plaintiff filed an Amended Complaint which omitted the allegation made in Plaintiff's original Complaint that Plaintiff had complained to Defendants, both during and after the second occasion she worked with Defendants, about their failure to pay her overtime. (Doc. # 14).

On October 17, 2014, in opposition to Defendants' motion, Plaintiff submitted an affidavit stating, "During the entire time I worked for Haynes & Haynes, I was not aware I was entitled to overtime pay for hours worked over 40 per week." (Doc. # 29-3).

## II.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond


the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by plaintiffs are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative."

*Sawyer v. Southwest Airlines Co.*, 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.     Analysis

Plaintiff's Amended Complaint asserts the following claims: (1) Count I – Violations of the FLSA's Overtime Requirements; (2) Count II – Retaliation in Violation of FLSA; (3) Count III - Breach of Contract; and (4) Count IV – Slander.  Each of these claims is addressed below.

####     A.     Judicial Estoppel Bars Plaintiff's FLSA and Breach of Contract Claims

Defendants argue that Plaintiff failed to disclose her potential overtime claims to the bankruptcy court at any time during the pendency of her bankruptcy petition, and therefore those claims are barred by the doctrine of judicial estoppel.  (Doc. # 21).  Plaintiff's breach of contract claim is based on the same underlying facts as her FLSA failure to pay overtime claim: Defendants failure to pay "overtime for hours worked over forty in a work week." (Doc. # 14 at 13-14, 15-16).  Thus, both claims arose at the same time, under the same facts, and are subject to the court's judicial estoppel analysis.

5

"Judicial estoppel protects the integrity of the judicial system by barring litigants from deliberately taking inconsistent positions based on the 'exigencies of the moment.' *Jones v. U.S.*, 467 Fed.Appx. 815, 817 (11th Cir. 2012) (quoting *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1285 (11th Cir. 2002)).  One context where judicial estoppel may be applicable is where a plaintiff in a civil lawsuit is also, or has been, a debtor in bankruptcy.  In *Burnes*, the Eleventh Circuit explained the importance of a debtor's full disclosure regarding civil litigation in bankruptcy proceedings:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system. For example, creditors rely on a debtor's disclosure statements in determining whether to contest or consent to a no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, the importance of full and honest disclosure cannot be overstated.

*Burnes*, 291 F.3d at 1286 (internal citations and quotation marks omitted).

Recognizing the importance of full disclosure in bankruptcy cases, courts have applied judicial estoppel to bar claims by plaintiffs who failed to disclose those claims in a prior bankruptcy case. *See, e.g., Robinson v. Tyson Foods, Inc*., 595 F.3d 1269 (11th Cir. 2010); *Barger v. City of Cartersville, Ga*., 348 F.3d 1289 (11th Cir. 2003); *Burnes*, 291 F.3d at 1287–88.  "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change." *Burnes*, 291 F.3d at 1286. "This duty applies to proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete

6

and honest disclosure exists in all types of bankruptcies.'" *Robinson*, 595 F.3d at 1274 (quoting *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003)). "[T]his circuit's precedent holds that a Chapter 13 debtor has a statutory duty to amend her financial schedule to reflect her current assets." *Robinson*, 595 F.3d at 1274.

Courts in this Circuit apply a two part test to determine whether to apply judicial estoppel: (1) has the party previously adopted an inconsistent position under oath in a judicial proceeding, and (2) did the party intend to "make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. These two factors "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

Here, the issue is whether Plaintiff knew she had a claim for unpaid overtime against Defendants at the time her bankruptcy petition was pending. Her petition was pending from April 2011 through January 2013. (Doc. # 13). After an initial nine-year period of employment with Defendants, Plaintiff returned to work with Defendants for approximately 18 months ─ from July 2011 through December 2012, while her bankruptcy case was pending. (Doc. 14, ¶¶ 27, 28). During this second stint working with Defendants, Plaintiff claims she was not paid overtime as required by the FLSA. (Doc. 14, ¶ 65).

At no time during the pendency of her bankruptcy case, did Plaintiff disclose either the changes in her sources of income or her potential overtime claim against Defendants. Item 21 on Schedule B to Plaintiff's Bankruptcy Petition, Plaintiff reported that she had no "[o]ther contingent and unliquidated claims of every nature . . .." (Doc. # 13 at 10). However, in Plaintiff's original Complaint, Plaintiff specifically alleged that she complained -- both during

the second occasion she worked with Defendants and after leaving the firm -- that she was misclassified and not being paid the overtime to which she was entitled. (Doc. # 1, ¶21). Over two weeks after Plaintiff's counsel were made aware that Defendants intended to move to dismiss Plaintiff's overtime claims on the basis of judicial estoppel due to her failure to list the claim as a contingent claim on her bankruptcy schedules, and after Defendants had actually filed their motion, Plaintiff filed an Amended Complaint which omitted the allegation that she had complained to Defendants about this issue while working with them.  Further, in response to Defendants' Motion, Plaintiff submitted an affidavit stating that she was not aware that she might have been entitled to overtime pay while her bankruptcy claim was pending. (Doc. # 29-3 at 3).

To say that there is an obvious difficulty in reconciling the specific allegations of Plaintiff's original Complaint with her subsequently filed affidavit is an understatement. Plaintiff has now taken two, diametrically opposed positions on the question of when she became aware that she had an overtime claim against Defendant.  The allegations of the original Complaint, filed July 11, 2014, asserted: "*During and after her employment*, Plaintiff spoke with her employers *on multiple occasions* about being misclassified and *not paid the overtime* she was entitled to. Despite Plaintiff's complaints, Defendants did not correct Plaintiff's misclassification or award her the overtime she was owed." (Doc. # 1 at 6) (emphasis added).  Later, on August 27, 2014, over two weeks after the discussion regarding the judicial estoppel issue and some ten (10) hours after Defendants filed their motion, Plaintiff filed an Amended Complaint which omitted the above-referenced specific allegations contained in the original Complaint set forth above.  Then, even later, in response to Defendants' motion, Plaintiff submitted an affidavit

8

stating: "I did not know or understand that employees' and employers' could not choose the method payment, and believed that based on my choice of hourly pay, I was not entitled to overtime pay." (Doc. # 29-3 at 3). This statement in her affidavit *squarely contradicts* the allegations in her original Complaint (which, again, were conspicuously dropped from her Amended Complaint). This sequence of events, and the absolute about-face on this issue, is disturbing for a number of reasons.[3] But, at least for now, the court's only concern is to apply the *Burnes* two-factor judicial estoppel test.[4]

First, not only has Plaintiff previously adopted a position under oath in a prior judicial proceeding (her bankruptcy) which is wholly inconsistent with her pleadings in *this* proceeding, but also she has taken a position under oath in *this* proceeding which directly contradicts a clear and concrete position previously taken in her original pleadings in *this* proceeding. Thus, the first *Burnes* factor is easily satisfied. The remaining question is whether Plaintiff's failure to list her overtime claim in her bankruptcy, and her about-face in this case about when she became aware of that claim, "make[s] a mockery of the judicial system." *Burnes*, 291 F.3d at 1285.

Plaintiff argues that she had no motive to conceal her claim in the bankruptcy proceeding because she was operating under a Chapter 13 repayment plan that provided for full payment to her creditors. This argument, however, ignores both (1) Plaintiff's continuing duty to supplement her bankruptcy debtor schedules (even in a Chapter 13 bankruptcy case under *Burnes*), and (2) the conspicuously inconsistent positions she has taken in this case. That is,

---

[3] For example, the Amended Complaint and the later filed affidavit occurred *after* the August 11, 2014 status conference in which Plaintiff's bankruptcy filing and the potential implications of the judicial estoppel issue were discussed. Defendants' counsel represented to the court at that status conference that they had also spoken with Plaintiff's original counsel about the issue (before he moved to withdraw).

[4] Although it is not relevant to the court's present inquiry, the court notes that Defendants and at least one other law firm for whom Plaintiff performed paralegal work, are experienced employment attorneys.

Plaintiff has taken one position in her bankruptcy filing (I do not have a contingent claim against my old firm) and another in this case (I do have such a claim). But there is more. She also has made a complete about-face from her original Complaint (I told those at my old firm they owed me overtime) when compared to her Amended Complaint and subsequent affidavit (I never told those at my old firm that they owed me overtime). The timing of this latter change of position in particular (it came after the status conference at which the issue of judicial estoppel was discussed) removes any doubt the court might have in concluding that these machinations were designed to make a mockery of the judicial system.

For these reasons, the court concludes that Plaintiff is judicially estopped from proceeding on her FLSA and breach of contract failure to pay overtime claims in this court ─ both by her failure to disclose the potential overtime claim in her bankruptcy case and by her about-face about when she knew of the claim. Defendants are entitled to judgment as a matter of law on these claims.

B.     **Plaintiff's Slander Claim is Barred by the Absolute Litigation Privilege**

Plaintiff's slander claim alleges that "Defendants, by and through their counsel of record, John Saxon, slandered Plaintiff by telling Plaintiff's original counsel of record that Plaintiff 'stole time' from Defendants." (Doc. # 14 at 16). Defendants argue that Plaintiff's claim is barred by Alabama's absolute litigation privilege. (Doc. # 21). Plaintiff responds that her claim is not barred because the statement at issue was "not in the due course of a judicial proceeding" and was "not made in court nor in any filing with the court, but were made extra judicially." (Doc. # 28 at 32). Plaintiff's argument does not cut ice. Simply stated, she reads Alabama's litigation privilege too narrowly.

"Alabama recognizes an absolute privilege for communications made *in connection with* and *relevant to* a judicial proceeding." *Redmon v. Auto,* 2014 WL 4855023 * 8 (M.D. Ala. 2014) (citing *O'Barr v. Feist*, 296 So.2d 152 (Ala. 1974)) (emphasis added). "The absolute privilege extends to quasi-judicial proceedings [] and to relevant communications preliminary to a proposed judicial proceeding []." *Redmon,* 2014 WL 4855023 at * 8 (citing *Webster v. Byrd*, 494 So.2d 31, 32 (Ala. 1986) and *Walker v. Majors*, 496 So.2d 726 (Ala. 1986)). The privilege is certainly not limited to statements made in court or pleadings filed with the court. Interestingly, Plaintiff has cited no legal support for the position that the privilege is so limited. That is not surprising. Alabama law on this issue is very clear:

> In *Walker*, the Alabama Supreme Court adopted the standard proposed in the Restatement (Second) of Torts, as follows:
>
>> A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

*Redmon,* 2014 WL 4855023 at * 8, n.9, quoting *Walker*, 496 So.2d at 729, and in turn quoting Restatement (Second) of Torts, § 587 (1977) (emphasis omitted).

According to Plaintiff's Amended Complaint, the alleged slanderous comment was made by Defendant's counsel "of record" to Plaintiff's original counsel "of record." (Doc. # 14 at 15). Because both counsel were "of record," the current judicial proceeding was, by necessity, already underway. Further, the alleged statement related to the subject of the present judicial proceeding: Plaintiff's pay while working with Defendants. Without question, the alleged slanderous statement had "some relation" to these judicial proceedings and was absolutely

11

privileged as a matter of law. *Redmon,* 2014 WL 4855023 at * 8, n.9.  Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's slander claim.

### C.     Plaintiff's FLSA Retaliation Claim

Count II of Plaintiff's Complaint asserts that Defendants engaged in retaliation in violation of the FLSA when they:

> conspired among themselves and with others, including John Saxon, their counsel of record, to threaten and intimidate, and did threaten and try to intimidate, Plaintiff with baseless counterclaims and an assessment of an unavailable award of attorneys' fees, and by disclosing Plaintiff's personal, confidential and private health information to others without Plaintiff's authorization, by slandering Plaintiff and engaging general smear tactics, including searching through Defendants' records to try to find fault or information to try to use against Plaintiff.

(Doc. # 14 at 14-15).  Plaintiff further alleges that, "The retaliatory acts and conduct of Defendants and their counsel of record John Saxon, caused Plaintiff to suffer severe mental anguish and emotional distress." (Doc. # 14 at 15).  Plaintiff seeks compensatory damages for this alleged retaliation under the FLSA.  (Doc. # 14 at 14-15).

The law in this Circuit is unsettled regarding the availability of emotional distress damages under the FLSA in connection with a retaliation theory.  Other circuits addressing the issue have held that emotional distress damages are recoverable for retaliation under the FLSA. The Eleventh Circuit has not squarely addressed the issue.  However, its language addressing related issues, such as the availability of punitive damages, suggests that it would follow those circuits which have recognized that compensatory damages are recoverable under the FLSA in connection with claims of emotional distress.  *See Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 934 (11th Cir. 2000) ("It is clear that all of the relief provided in section 216(b) is compensatory in nature.").

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" a plaintiff's wage claim. 29 U.S.C. § 215(a)(3). Retaliation claims under the FLSA are analyzed using the *McDonnell Douglas* framework which is applied in retaliation cases under Title VII, the ADEA and the ADA. To establish a prima facie case of retaliation under FLSA, a plaintiff must show that: (1) she engaged in activity protected under the act; (2) she subsequently suffered an adverse action by the employer, and (3) a causal connection exists between the employee's protected activity and the adverse action. *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342 (11th Cir.2000). A failure to establish any of these three elements is fatal to a prima facie case of retaliation under the FLSA. *Id.* As to the adverse action by the employer, the inquiry is whether an employer's actions likely would have "dissuaded a reasonable worker from making or supporting a charge" against the employer. *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Whether Plaintiff has stated a valid retaliation claim is debatable, but at this stage of the case, on the pleadings, the court cannot say that Plaintiff's claim fails as a matter of law.[5] The Eleventh Circuit has recognized that "'the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related.'" *Worley v. City of Lilburn,* 408 Fed.Appx. 248,

---

[5] Defendants argue that the litigation privilege applies to bar this claim, also. However, this court has already rejected the idea that the litigation privilege extends beyond the defamation context. *Tucker v. Housing Authority of Birmingham Dist.,* 507 F.Supp.2d 1240, 1273 (N.D. Ala. 2006) (noting that the "litigation privilege" was created solely to prevent suits for defamation and courts have not applied the privilege outside of this context), *aff'd,* 229 Fed.Appx. 820 (11th Cir. 2007).

250 (11th Cir. 2011), quoting *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008); s*ee also Phillips v. M.I. Quality Lawn Maintenance, Inc*., 2010 WL 4237619, *4–5 (S.D. Fla. 2010) (rejecting argument on motion to dismiss that plaintiffs could not maintain FLSA retaliation claim because plaintiffs were no longer employed at the time the questionable conduct took place and finding that "an employer's retaliation against an employee need not be limited to conduct related to employment or occurring at the workplace to be actionable ."); *Ali v. District of Columbia Government,* 810 F.Supp.2d 78, 88 (D. D.C. 2011) (while unrealized threats cannot constitute adverse action in discrimination cases, they may be materially adverse for retaliation purposes (citing *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) ("A threatening verbal statement, standing alone, might well constitute a materially adverse action.")). Although this court will allow this claim to proceed at this point in time, it remains to be seen whether Defendants and their counsel have exhibited any conduct more egregious than "zealous advocacy," a concept with which, at least in the court's experience, Plaintiff's counsel is quite familiar.

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion is due to be granted in part and denied in part. A separate order will be entered.

**DONE** and **ORDERED** this July 10, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE